UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**FILED**
SEP 1 4 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-450-GWU

TAMMY MCDANIEL,            PLAINTIFF,

VS.        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

McDaniel

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

McDaniel

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

McDaniel

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

McDaniel

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

McDaniel

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Tammy McDaniel, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment as a result of an affective disorder. (Tr. 19). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 23-6). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she had no exertional limitations and, despite having unspecified mental restrictions, was still capable of understanding, remembering, and carrying out simple instructions, putting forth the effort required to finish tasks, working in an object-focused setting, and adapting to routine situations. (Tr. 288). The VE responded that there were jobs

7

that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 289).

On appeal, this Court must determine whether the hypothetical question is supported by substantial evidence, and that it fairly depicts the plaintiff's condition.

The plaintiff alleged disability due to depression, anxiety, nerves, shoulder and neck pain, muscle spasms, and a nervous stomach. (Tr. 60). She described a nervous condition related to family problems, including her sister's murder, which had resulted in a suicide attempt, although she had also been psychiatrically hospitalized for detoxification from prescription drugs. (Tr. 261, 265, 267-8). However, her current treating physician, Dr. Roy Varghese, had prescribed both Xanax and Lortab. (Tr. 270, 278-9). She had no side effects from the medications. (Tr. 274). Her nerves made it difficult for her to be in public, and to get along with co-workers and supervisors, and she had never worked at any job for more than a month. (Tr. 262-3). She described neck and shoulder pain as well as lower back pain radiating down the right leg. (Tr. 271-2).

Medical evidence from prior to the plaintiff's alleged onset date of May 2, 2001 included records from a pain management specialist, Dr. Kendall Hansen, who provided nerve blocks of the C1 through C4 level of the cervical spine L3 through S1 level of the lumbar spine between 1998 and November, 2000. (Tr. 110-14, 226-34). Specific commentary on the medical findings that led to the nerve blocks is not

8

McDaniel

provided in Dr. Hansen's notes, although he indicated on several occasions that they provided excellent relief and allowed the patient to continue with her activities of daily living. (E.g. Tr. 230).

There are also hospitalization records on two occasions after the onset date for complaints of abdominal pain and vomiting, but testing was unremarkable, and the plaintiff was discharged without any indication of permanent restrictions (Tr. 115, 119).

Dr. Divyesh Bhakta conducted a consultative physical examination on December 29, 2001. The plaintiff described anxiety and depression problems for several years, as well as neck and shoulder pain since being "rear ended" in a gas station in 1992. (Tr. 140-1).[1] Dr. Bhakta noted that the plaintiff's affect was somewhat flat and that during the examination she began to cry hysterically. She was also dressed inappropriately in gloves and wore a heavy jacket despite being in a warm room. (Tr. 142). However, Dr. Bhakta's physical examination was essentially normal, with the plaintiff noted to have equal reflexes, an ability to flex forward 90 degrees at the waist, squat and stand without assistance, and walk heel to toe and perform a tandem gait. (Tr. 142-3). An x-ray of the cervical spine was normal, and the physician also reviewed an upper GI series from May, 2001 which

---

[1]As the ALJ noted, the plaintiff testified at the administrative hearing that she had been hit "head on" in this incident. (Tr. 269).

9

was normal, and an abdominal ultrasound from April, 2001, which was normal. (Tr. 143). Dr. Bhakta did not find any evidence for physical restrictions. (Id.). However, he felt that she had moderate to severe anxiety and depression with a significant functional impairment, and suggested a psychiatric evaluation to assess the underlying condition.

Office notes from the plaintiff's treating family physicians at Mary Breckenridge Healthcare provide very little objective information about the plaintiff's frequent complaints of neck and back pain and headache. On one occasion, fibromyalgia was diagnosed, but this condition was not mentioned in subsequent visits. (Tr. 202). Dr. Varghese saw the plaintiff in April, 2002, when she was admitted for severe vomiting and gastritis, but the only finding listed was epigastric tenderness, and she was advised to change her lifestyle, and stop smoking. (Tr. 197). She was also given a nerve medication, Klonopin. (Id.). The next month, the plaintiff complained that she could not take Klonopin, and said that she had been assaulted by her boyfriend. (Tr. 196). Dr. Varghese made no findings on examination, but prescribed Maxidone and Xanax. (Id.). She was admitted to the hospital for 24 hours in June, 2002 for chest and epigastric pain, but an EKG and cardiac enzymes were normal, and she felt better after being given Phenergan and "GI cocktails." (Tr. 194). She was discharged home with permission to perform "normal" activities. (Id.). Finally, she was seen by Dr. Varghese on July 8, 2002 with

10

McDaniel

a complaint of severe back pain. (Tr. 192). His findings were back tenderness, positive straight leg raising, muscle spasm, and no neurological deficits. (Tr. 192). He prescribed Maxidone, Xanax, a Ventolin inhaler, Tagamet, and Nexium for "break through peptic ulcer." (Id.).

Dr. Varghese prepared a physical residual functional capacity assessment on August 7, 2002, stating that the plaintiff could not lift more than five pounds occasionally or frequently, stand for five minutes in an eight-hour day, sit for five minutes in an eight-hour day, could never perform any postural activities, and would have restrictions on heights, moving machinery, temperature extremes, chemicals, dust, and fumes. (Tr. 213-16). The reasons given were "she can't work," and "back pain anxiety." (Id.). The ALJ rejected Dr. Varghese's restrictions on the grounds that they were not supported by his objective findings and were inconsistent with the weight of the medical evidence in the record. (Tr. 23).

The plaintiff argues on appeal that as Dr. Varghese was treating physician, his opinion is entitled to great weight, and that, as in the recent case of Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004), the Commissioner failed to follow her own guidelines at 20 C.F.R. Section 416.927(d)(2) in not giving "good reasons in [her] notice of determination or decision for the weight [given] a treating source's opinion." 378 F.3d at 545.

11

Generally, while the opinion of a treating physician such as Dr. Varghese is entitled to great weight, and to controlling weight if uncontradicted, it must be supported by objective signs, symptoms, and laboratory findings. See, e.g., Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). In the present case, while the evidence reflects that the plaintiff was given treatment for musculoskeletal problems, the only objective study, the cervical spine x-ray obtained by Dr. Bhakta, was normal. Dr. Bhakta's findings did not indicate any physical restrictions. The worst findings given by Dr. Varghese were tenderness, muscle spasm, and a positive straight leg raising test, but he found no neurological deficits. (Tr. 192). Therefore, there was substantial evidence from which the ALJ could have concluded that Dr. Varghese's opinion was not supported by his findings or the evidence as a whole, particularly in view of the physician's restrictions of standing only five minutes in eight hours and sitting for five minutes in eight hours. The plaintiff herself, although describing unbearable back pain after sitting or standing only 10 minutes, also testified that she would pick up around her house, do laundry, fold clothes, and watch television in a recliner for 20 to 30 minutes. (Tr. 272-4). Whatever else might be said about Dr. Varghese's restrictions, his limitations on sitting and standing are so extreme as to be unbelievable. The ALJ also pointed out there is no evidence to support the

McDaniel

environmental restrictions given by the physician.[2] While the ALJ's discussion of Dr. Varghese's assessment could have been more detailed, it does provide an adequate description of his thought processes and "gives good reasons" for not accepting the opinion of the treating physician. Therefore, the requirements of Wilson are met.

The plaintiff also objects to the ALJ's lack of specific mental restrictions, pointing out that she had been hospitalized for recurrent major depression with psychotic features, post traumatic stress disorder, opiate dependence, and borderline personality traits in July, 2001, and that a consultative psychological examiner, Dr. Gary Maryman, had also concluded after a February, 2002 examination that the plaintiff would probably be capable of simpler tasks in a low to medium stress environment, she would have difficulty with a fast-paced and high-pressure work atmosphere. (Tr. 151-2).[3] The plaintiff had also been treated at Kentucky River Comprehensive Care Center beginning in late 2001 and was given a diagnosis of bipolar disorder, rule out panic disorder, and rule out Xanax dependence. (Tr. 222). State agency psychologists who reviewed a portion of the

---

[2] Although admonished to stop smoking (Tr. 197), the plaintiff testified at the administrative hearing that she continued to do so (Tr. 273). Furthermore, Dr. Varghese made reference in his notes to a peptic ulcer, but an upper GI series and small bowel follow through the previous year had found only nonspecific abnormalities. (Tr. 119).

[3] He had diagnosed suspected malingering, a dysthymic disorder, polysubstance abuse in questionable remission, and alcohol abuse reportedly in full sustained remission. (Tr. 151).

13

McDaniel

record concluded that the plaintiff would have moderate limitations in many areas. (Tr. 168-70, 188-90). Significantly, however, all the psychological examiners and reviewers had also listed substance abuse problems among their diagnoses, including the state agency reviewers, who evaluated her problems under the headings of affective disorders and substance addiction disorders. (Tr. 153, 173); any restrictions given by the sources are tainted, in view of Public Law 104-121 which proscribes a finding of disability based on substance abuse.

The decision will be affirmed.

This the __14__ day of September, 2005.

*signature*
G. WIX UNTHANK
SENIOR JUDGE